# LUELLA HERRICK FISKE v. IZZIE H. W. LAWTON.[1]

December 19, 1913.

Nos. 18,306—(252).

**Agreement to adopt child.**

1. Evidence considered and *held* to show that a child, unrelated to intestate by blood, was taken into the latter's home under an agreement by her and her husband to make such child their child and heir, which agreement was evidenced by a writing subsequently lost.

**Same — degree of proof.**

2. Proofs necessary to establish such agreements must be clear, positive, and convincing in all particulars; relief should be cautiously granted; and each case must rest on its own facts.

**Consent of parent.**

3. Absence of the child's father's consent to the "adoption" *held*, under

[1] Reported in 144 N. W. 455.

---

Note.—The authorities on the validity of adoption without consent of natural parents are collated in a note in 30 L.R.A.(N.S.) 146. And as to the constitutionality of a statute permitting adoption of child without consent of parents, see note in 18 L.R.A.(N.S.) 926.

Upon the right of a child adopted in another state to take under local statute of descent or distribution, see notes in 21 L.R.A.(N.S.) 679 and 25 L.R.A.(N.S.) 1285. And on the question of descent and distribution of property of adopted child, generally, see note in 43 L.R.A.(N.S.) 1056.

The question of the legal status of an adopted child is treated in a note in 17 L.R.A. 435.

the circumstances of the case, not available to the legal heir of intestate for the purpose of defeating the child's rights under the contract.

**Agreement valid where made — remedy governed by local law.**

4. The contract was valid in Ohio, where it was made, and when executed, the deceased dying intestate, it entitled the child, pursuant to the equitable maxim that equity regards that as done which ought to be done, to the same share in decedent's estate as a natural child; the remedies thereunder being governed, however, by our laws.

**Inheritance of child's heirs.**

5. Upon the child's death, leaving lawful issue, the latter inherited through her a share in the estate of the deceased "adopting" parent as if she, the "adopted" child, had been a daughter by blood.

**Jurisdiction of probate court.**

6. Intestate's estate having been reduced to personalty, the probate court had power to adjudge to whom the same should be apportioned, and, as an incident thereto, to determine the rights of appellant, the daughter of the "adopted" child, under the contract, and, further, by its final decree, to award to appellant the share of the estate to which she was equitably entitled under the contract whereby her mother was "adopted."

From a decree of distribution in the matter of the estate of Garafilia Herrick, deceased, in the probate court for Hennepin county, George R. Smith, J., Izzie H. W. Lawton appealed to the district court for that county, where the appeal was heard before Leary, J. who made findings and ordered judgment that Luella H. Fiske was not an heir of decedent and was not entitled to any share in her estate and reversed so much of the decree of distribution of the probate court as found that said Luella was an heir and assigned her a share of the estate. From the judgment entered pursuant to the order for judgment, Luella Herrick Fiske appealed. Reversed.

*Frederick H. Boardman,* for appellant.

*William P. Roberts* and *Horace W. Roberts,* for respondent.

PHILIP E. BROWN, J.

Appeal by Luella Herrick Fiske from a judgment of the district court, reversing so much of the decree of the probate court as awarded her a share in the estate of Garafilia Herrick, deceased.

In 1853 and 1854, William W. Herrick and his wife, the deceased,

resided in Ohio, and were childless. Riley and Sarah Ghaston, of the same place, then had a daughter, the mother of this appellant, aged about four years. During the same or the following year, this child was taken into the Herrick family, given their name, brought up by them in their home, and known and introduced as their daughter, and until their deaths sustained to each of them the same relation as an affectionate and loving daughter to her parents. She was, however, unrelated to them by blood. In 1868, or prior thereto, the Herricks moved to Minneapolis, bringing the child with them. On the death of Mr. Herrick, which occurred many years before that of his wife, he remembered the child in his will. She married in 1870 and died in 1877, leaving appellant, her only child, surviving. Mrs. Herrick died intestate in 1911, leaving a purported will, which was refused probate, in which she described appellant as her granddaughter, and attempted to bequeath to her, for life, substantially one-third of her property. Mrs. Herrick's estate having been reduced to money, the probate court, in its final decree, distributed one-half thereof to appellant, and the other to respondent, a daughter adopted under the Minnesota statute long after appellant's mother came into the family. Respondent appealed therefrom to the district court, where the court found most of the facts above stated, those recited and not found being undisputed, and also that appellant's mother was never adopted by Mrs. Herrick, nor taken into the Herrick home upon any agreement by decedent to adopt her; further, that, when the mother was taken into such home, Ohio had no statute under which her adoption could have been accomplished, and she never was adopted. The court concluded that appellant was not an heir of decedent and not entitled to any share in her estate, thus reversing the decree of the probate court.

1. Ohio had no statute under which the child could have been adopted when she was taken into the Herrick home, and no statutory adoption was ever made. If, then, the further finding that she was not taken into their home under any agreement for adoption, and heirship, by decedent, is sustainable, this case is at an end. The proofs in this regard are undisputed, and after careful consideration we have concluded the finding cannot stand. It would serve no useful

purpose to detail the evidence. The only result we can reach therefrom is that the Herricks received this girl from her mother under an agreement to make her their child and heir; and, further, that shortly thereafter an instrument in writing, subsequently lost, was executed in Ohio to evidence the agreement. Unquestionably, proofs necessary to establish such agreements must be clear, positive, and convincing in all particulars. Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 Am. St. 420. Relief in cases of this kind should be cautiously granted. Each case, however, must rest on its own facts. Neither are we unmindful of the weight to be attached to findings; nor that agreements to adopt do not in themselves create heirship. But here appellant's rights are shown by the testimony of disinterested witnesses, and we find therein no suspicion of taint or interest to induce falsity. Much that is detailed occurred upwards of half a century ago, so literal accuracy is not to be expected. Indeed, particularity in this regard might be a suspicious circumstance.

But there are other considerations tending strongly to establish appellant's hypothesis. Every act of all persons concerned in changing the custody of this child from her natural parents to the Herricks, their subsequent conduct towards her and her relatives, her change of name, their practical adoption of her, and recognition of contractual obligations in their respective wills,—all these must be considered, and are not only consistent with appellant's theory, but inconsistent with any other. The acts referred to, coupled with the testimony concerning conversations, established the agreement as to adoption and heirship. See 1 Wigmore, Evid. §§ 267, 272; Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885, 85 Am. St. 480.

The evidence of the child's father's consent to the "adoption" was slight, but this does not avail respondent. If he did not consent he, of course, might have objected and, perhaps, have successfully claimed that his parental rights could not thus be impaired; but there is no evidence in this regard and, even were such the fact, it would not entitle heirs of the "adopting" parent to avoid the "adoption." Doubtless after such long delay even the father would not be heard to object. However, his rights, whatever they may have been in the premises, would not be impaired by permitting the "adopted" child

to succeed to the estate of the "adopting" parent. In Re Williams, 102 Cal. 70, 36 Pac. 407, 41 Am. St. 163. Moreover, the deceased voluntarily entered into the contract and pursuant thereto received, during her life, the benefits of the relation thereby created, the services, society, affection, and devotion, of an adopted daughter made her own. No principle of law or equity requires à holding that respondent can avail herself of technical objections to the child's status, the validity of which, so far as appears, remained undisputed by deceased, after full performance of the contractual relations therein involved. See Lynn v. Hockaday, supra.

2. Respondent contends that "adoption was unknown at the common law, at least in any sense involving a right of inheritance, and it exists in common-law states only to the extent of and by virtue of statutory enactment and the compliance therewith;" further, that the agreement alleged would under no circumstances work an actual adoption or enable the child to inherit from the Herricks, and specifically such follows under the laws of Ohio. For brevity, we will consider these claims collectively.

Adoptions were unknown to the common law, but this is of no special significance. Courts of equity have enforced contracts like the one alleged, whether oral or written, with respect to property rights involved. Such was done in New Jersey, in Van Dyne v. Vreeland, 11 N. J. Eq. 370, as early as 1857, without statutory authority. This rule has since been followed in many jurisdictions. In Wright v. Wright, 99 Mich. 170, 58 N. W. 54, 23 L.R.A. 196, proceedings were taken to adopt a child pursuant to a statute subsequently declared unconstitutional. Nevertheless, the court, acting on the theory of an executed understanding for adoption and heirship, and the well established principle that equity should declare that to be done which the parties clearly intended, decreed that title to the real property of the adopting father vested, by reason of the contract, at his decease, in the adopted son, "the same as if he had been the son." In Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L.R.A. (N.S.) 1130, 12 Ann. Cas. 140, the same result was reached after an extended review of authorities, where there was an invalid statutory instrument of adoption. In Winne v. Winne, 166 N. Y. 263,

59 N. E. 832, 82 Am. St. 647, an agreement by a childless person with plaintiff's mother to make him, an infant, sole heir, was enforced after performance on his part, as to both real and personal property. See also Laird v. Vila, supra; Kleeberg v. Schrader, 69 Minn. 136, 72 N. W. 59; Grant v. Grant, 63 Conn. 530, 29 Atl. 15, 38 Am. St. 379; Lynn v. Hockaday, supra; Albring v. Ward, 137 Mich. 352, 100 N. W. 609; Burns v. Smith, 21 Mont. 251, 53 Pac. 742, 69 Am. St. 653; Vantine v. Vantine, (N. J.) 15 Atl. 249, 1 L.R.A. 155; Kofka v. Rosicky, 41 Neb. 328, 53 N. W. 788, 25 L.R.A. 207, 43 Am. St. 685. The great weight of authority is that such contracts are not unlawful or against public policy. See note, 88 Am. St. 869. Nor do we find the law otherwise in Ohio. Clark v. Bayer, 32 Oh. St. 299, 30 Am. Rep. 593, accords with the views stated. See also Gray v. Field, 19 Wkly. Law Bul. (Ohio) 121. In Wright v. Wright, supra, 176, it is said the supreme court of Ohio in Shahan v. Swan, 48 Oh. St. 25, 26 N. E. 222, 29 Am. St. 517, expressly recognizes the doctrines of Van Dyne v. Vreeland, supra, and kindred cases.

We hold the contract valid where made, and when executed, the deceased dying intestate, it entitled appellant's mother, pursuant to the equitable maxim that equity regards that as done which ought to be done, to the same share in decedent's estate as a natural child; the remedies thereunder being governed, however, by our law. 1 Dunnell, Minn. Dig. § 1545. Furthermore, appellant, being the heir of her mother, whose rights under the contract were established by performance prior to her death, had the same right to inherit through her a share of the estate of the deceased "adopting" parent as if her mother were a daughter by blood. Note, 118 Am. St. 688.

3. Had the probate court power to award appellant a share of the estate by final decree? We deem it settled by the weight of authority that this contract, when executed, created an equitable estate in the property of the intestate. Courts, however, have found adjective difficulties in the way of enforcing such contracts, owing to death of the promisor and the absence in some states of statutes like ours— G. S. 1913, § 8027, which however, applies only to district courts— authorizing courts to pass title by judgment. Where land is involved

some courts of general equitable jurisdiction have worked out a remedy by fastening a trust upon the property in favor of an "adopted" child, as against the heir, and enforcing conveyance of the legal title by the latter. 6 Pomeroy, Eq. Jur. § 746. Whether these difficulties are more imaginary than substantial, where real property is in controversy, we need not stop to inquire, nor in what court remedies must be sought. We have here no question of this kind to deal with, nor any problem relating to divesting an heir of legal title; for the estate has been reduced to money, the legal title to which is in the administrator, over whom the probate court has exclusive original jurisdiction. It is true that most, if not all, of the cases cited supra were brought in courts of general equitable jurisdiction, and involved real property. There is a marked distinction, however, between the jurisdiction and powers of our probate courts under the constitutional provision giving them jurisdiction over estates of deceased persons, and probate, surrogates', or ordinaries' courts of other states, which derive all their jurisdiction and powers from statute. This is pointed out by Chief Justice Gilfillan, in Culver v. Hardenbergh, 37 Minn. 225, 234, 33 N. W. 792, 797, and in the same case, at page 233, we find the following, quoted from the opinion of Mr. Justice Mitchell in State v. Ueland, 30 Minn. 277, 281, 15 N. W. 245, reaffirmed:

"It was clearly the intention of the constitution to give the probate courts the entire and exclusive jurisdiction over the estates of deceased persons and persons under guardianship, in the same manner and to the same extent that it gives to the district court jurisdiction over civil cases in law and equity arising out of other matters of contract or tort."

Neither legislature nor courts can add to or take from the constitutional jurisdiction conferred. Within the limitations incident to the subject matters specified by the Constitution, our probate courts possess superior and general jurisdiction, and have implied power to do whatever is reasonably necessary to carry out powers expressly conferred. See cases cited in 2 Dunnell, Minn. Dig. § 7770. Chief Justice Start thus tersely summarized this matter in his dissenting opinion in Brown v. Strom, 113 Minn. 1, 11, 129 N. W. 136, 139:

"While they have no general equity powers, yet as respects the

subjects committed by the constitution to their exclusive jurisdiction, they have the plenary powers, legal and equitable, that any court has."

It has been held, furthermore, that with respect to these subjects the constitutional grant of jurisdiction should be liberally construed. Harrison v. Harrison, 67 Minn. 520, 70 N. W. 802; Fitzpatrick v. Simonson Bros. Mnfg. Co. 86 Minn. 140, 146, 90 N. W. 378.

The circuity incident to acceptance of respondent's theories is illustrated in the present case, the claim being that the probate court had no jurisdiction in the premises, and the district court, on appeal therefrom, having no greater or different jurisdiction (see authorities cited in 2 Dunnell, Minn. Dig. § 7795), appellant is entitled to no relief in the present proceeding, but must bring an independent action in the district court to establish her rights. As said in Brown v. Strom, supra:

"The law is concerned not so much with working out an abstract and ideal harmony with respect to the limits of this dual jurisdiction (of district and probate courts) as it is with the efficient administration of practical justice."

Neither can it be said that appellant was a stranger to the estate or not interested in its administration; nor that because a court cannot decree the status of adoption it may not adjudge property rights equitably equivalent to those legally incident thereto. In Kleeberg v. Schrader, 69 Minn. 136, 72 N. W. 59, L. agreed, in writing and for a consideration, to give and leave, at her death, all her property to K. The latter performed the contract, and L. died, without performing. The probate court was held to have jurisdiction to hear and determine K's claim to the property of L., and also to a distributive share of personalty in an estate of a third person inherited by L., though neither K. nor L. knew, when the contract was made, that such share would ever come to L; and K. prevailed as to both. See also State v. Probate Court of Hennepin County, 112 Minn. 279, 287, 128 N. W. 18; Sprague v. Stroud, 114 Minn. 64, 68, 129 N. W. 1053.

We hold the probate court had power to adjudge to whom the pro-

ceeds of this estate should be apportioned, and, as an incident thereto, to determine appellant's rights under the contract.

Judgment reversed.