## IN RE ESTATE OF MARY FIRLE.
## HATTIE GOODSPEED AND OTHERS, APPELLANTS.[1]

March 20, 1936.

No. 30,680.

See 191 Minn. 233, 253 N. W. 889.

*Frank J. Collins,* for appellants.

*H. D. Irwin* and *Thompson, Hessian & Fletcher,* for respondents.

[1]Reported in 265 N. W. 818.

LORING, JUSTICE.

This is an appeal by the sisters of Mary Firle, who died intestate in 1931, from a judgment of the district court, which affirmed a probate court's decree of distribution in Mary Firle's estate. William Firle, the respondent, was, by that decree, awarded the entire estate as her sole heir at law. The case was here before and is reported in 191 Minn. 233, 253 N. W. 889.

William Firle bases his claim to the estate on an alleged contract to adopt, fully executed. It is the contention of the appellants that since no steps were ever taken to effect a legal adoption respondent cannot inherit from his foster parents and that they, as sisters and next of kin of Mary Firle, are entitled to have the estate distributed to them.

There seems to be little question but that a contract to adopt of the kind here in question will, when executed, give rise to the same obligations as would ensue from a full compliance with the adoption statute. The rule is well stated in the syllabus by the court in Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421:

"1. Where under an oral contract to adopt an infant and to give her a specified portion of the property of her foster parents at their death in consideration of the relinquishment of all parental rights by her natural parents, the child is reared as the child of her foster parents and renders to them all the duties and services of a daughter until she attains her majority, and such foster parents die without having legally adopted her and without making any provision for her by will or otherwise, the property rights provided for in such contract may be enforced in equity. * * *

"2. If the contract merely provided that she should be adopted, and contained no express provision in respect to property rights, *she became entitled to the property rights given by statute to an adopted child.*" (Italics supplied.) See also cases cited in the opinion at p. 58, and 1 C. J. p. 1376.

The cases heretofore decided by this court where this question has been at issue have been actions where the adopted child has sought to enforce specific performance of the oral contract. Such a con-

tract will be enforced when the oral agreement is established by clear and convincing evidence. Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 A. S. R. 420. It must also be at least partly performed. Although this is an action to establish heirship, it would be inconsistent to hold that the respondent, if entitled to specific performance, would not be able to establish his right to the estate because this is not such an action.

■ The record does not show a contract to adopt expressed in words, but respondent relies upon a contract as evidenced by the facts surrounding his removal from the Bethany Home of Minneapolis, a home for orphan children, to the home of William Firle and his wife, Mary, the decedent, and the subsequent conduct and admissions of the parties.

William A. and Mary Firle, in 1896, took respondent, then a child of three years, from the Bethany Home for the purpose of giving him a home. Respondent's natural parents were unknown, and it was thought that they had been lost in the Hinckley fire. Marion Lacy, an employe of the home for 45 years, was then assistant superintendent of that institution. She testified at the trial. According to her testimony it was the custom of the home to require people to adopt children whom they took from the home. They "were supposed to adopt them." Shortly after the Firles took respondent into their family, Miss Lacy, at the instance of the superintendent of the home, wrote the Firles at length with regard to the child and in a postscript to the letter stated:

"You will have to adopt him as a deserted child as no one has any claim on him."

From the time the Firles took the boy they continually referred to him as their son. On many occasions they announced to their friends in Chaska, where they lived for several years, that they had adopted him. He was taken to their church and baptized under the name of William Firle. They stated to the minister at that time that they had adopted the boy. They were careful not to let him know that he was an adopted child and not their own. William Firle took out a life insurance policy on the boy's life and desig-

nated himself in the application as "father." They took steps to teach him a trade, and he turned over most of his earnings to his foster parents. When respondent entered the army he was still living with the Firles, and for ten months they received an allotment of his pay as his parents. When he returned from the army he again went to live with the Firles. In 1922 he was married, and later in a suit for divorce between respondent and his wife a five-year old child of that marriage was awarded to the foster parents as its "grandparents." After his divorce respondent returned to live with his foster parents. He took care of William A. Firle in his last illness and nursed Mary Firle during illness. The record is replete with instances indicating a strong affection between the Firles and respondent.

"The introduction of a waif into a family of affluence speaks of the benevolence of the family that receives it; but its long continuance in the home, its treatment by its foster parents, and their well-established declarations as to its *status* with respect to their property may well support a finding that an agreement existed in that regard." Middleworth v. Ordway, 49 Misc. 74, 76, 98 N. Y. S. 10.

The facts set out above all indicate that there was an agreement to adopt respondent. They repeatedly stated that they had adopted him. The evidence all corroborates the existence of a contract to adopt between the Bethany Home and the Firles. We are of the opinion that the status of William as an heir was properly before the probate court and that conduct and admissions expressed a contract which created the relationship of parent and adopted child.

We have examined the appellants' various assignments of error with regard to the admission of testimony and find them all to be without merit.

Affirmed.