RHODE, Respondent, v. FARUP, et al, Appellants

(293 N. W. 632.)

(File No. 8319. Opinion filed August 30, 1940.)

**Palmer K. Larson** and **B. O. Stordahl,** both of Sioux Falls, for Appellants.

**Tom Kirby** and **T. N. Feyder,** both of Sioux Falls, for Respondents.

ROBERTS, J. Hansina Rhode died intestate August 23, 1938, leaving no husband or lineal descendants surviving. Arthur Rhode commenced this action for the specific performance of a contract alleged to have been made between Agnes Peterson, mother of the plaintiff, and Hans and Hansina Rhode. The defendants are the administrator of the estate and all the collateral heirs, defendants Agnes Peterson and Ruth Peterson being nieces and the other defendants being brothers and sisters of Hansina Rhode. Plaintiff alleges that by the terms of the contract the

Rhodes agreed to adopt him as their child and to make him their heir; that pursuant to this agreement plaintiff was received into their home as an adopted child; and that thereafter he resided in their home until the death of Hansina Rhode and was in all respects treated and held out as their own child and heir. After further alleging facts pertaining to the administration of the estate and the property left by the deceased and that prior to his death in February, 1936, Hans Rhode conveyed all of his property to his wife, plaintiff prays that the agreement made and entered into between Hans and Hansina Rhode and Agnes Peterson be specifically enforced and that plaintiff be adjudged to be the owner of all of the property left by the decedents.

Defendant Agnes Peterson made no answer or appearance. The other defendants interposed a joint answer specifically denying that a contract was entered into. The court found for the plaintiff and from a judgment entered for specific performance, an appeal has been taken to this court.

The sufficiency of the evidence to sustain the findings of the trial court is challenged. The trial court found that "during October, 1924, and prior thereto, the said Hans Rhode and Hansina Rhode desiring to take the minor, Arthur Rhode, into their home as their child, obtained the consent" of his parents; that "it was agreed between the said Hans Rhode and Hansina Rhode and the mother and father of Arthur Rhode * * * that the said Rhodes were to take the plaintiff minor, Arthur Rhode, as their child, and were to adopt him"; that "they were to make him their heir * * * and that the plaintiff, Arthur Rhode, was to inherit their property upon their death"; that "pursuant to said understanding and agreement" the Rhodes "took the plaintiff Arthur Rhode into their home"; that "thereafter and until the death of Hans Rhode in February, 1936, the said Hans Rhode and Hansina Rhode kept the plaintiff in their home, and in every manner and respect treated and considered him and held him out as their child and heir"; and that "after the death of said Hans Rhode, the plaintiff continued to live with and was cared and provided for by

the said Hansina Rhode, and she in every manner and re-spect continued to treat and hold the plaintiff out as her child and heir."

Hans Rhode and his wife resided on a farm, which he owned, in Minnehaha County, a few miles northeast of Sioux Falls. In March, 1929, they moved from the farm to Sioux Falls and there resided until their respective deaths. Agnes Peterson, niece of Hansina Rhode, came from Nor-way, and for a number of years made her home with Mr. and Mrs. Rhode. She married John N. Peterson and there-after resided on a nearby farm. The Petersons had three children of whom the plaintiff, born July 9, 1923, was the youngest. The mother on behalf of the plaintiff testified with respect to the alleged contract and the circumstances surrounding the taking of plaintiff by Mr. and Mrs. Rhode into their home. She testified that shortly after birth Mr. and Mrs. Rhode expressed a desire "to take the baby and keep him for their own"; that thereafter there were several discussions among them about taking the boy; that Mr. and Mrs. Rhode stated that they would leave their property to the plaintiff; that the Petersons agreed to the arrangement; that Mr. and Mrs. Rhode took the child into their home in October, 1924, when he was 15 months of age and that they gave him the name of Rhode "because he (Mr. Rhode) said his name wasn't going to die out"; that the plaintiff resided in the Rhode home until about the time of the death of Mr. Rhode in 1936; that she had conversation with Mrs. Rhode after the death of Mr. Rhode; that Mrs. Rhode said that "she was going to take care of Arthur and keep him and take care of him and give him what little she had"; that at another time Mrs. Rhode said that "she was going to fix papers to protect Arthur"; that when Mr. Rhode died Mrs. Rhode sent an acknowledgment of floral offerings signed "Mrs. H. Rhode and son"; that plaintiff attended the public schools in Sioux Falls and was known as Arthur Rhode; that he later attended school in the country and changed his name to Peterson because school children "teased him" when he did not use the family name; and that Mrs. Rhode "wanted him to go to school" in the country to keep him off the streets.

John N. Peterson testified that he was present during some of the conversations between his wife and Mr. and Mrs. Rhode and corroborated much of the testimony given by her.

It appears from the evidence that a judgment for divorce in an action instituted by Agnes Peterson was entered in December, 1924.

Several witnesses testified in regard to declarations and statements made by decedents. Rev. J. H. Myrwang testified that he had visited with Mr. Rhode on several occasions; that Mr. Rhode said that "he and his wife had no children, but they had an adopted son, Arthur Peterson"; and that decedent had referred to the plaintiff at other times as his adopted son. Another witness testified that Mr. Rhode said "that was his boy and everything was going to be left to him." Without undertaking to detail the other testimony in behalf of the plaintiff, suffice it to state that there were several witnesses who testified to the facts that Mrs. Rhode after the death of her husband referred to the plaintiff as her son and that he would inherit her property.

Ruth Peterson, sister of Agnes Peterson and a witness for the defendants, testified: "I never heard they made a contract" for the adoption of Arthur until after the summons was served in this action; and that she had a conversation with her sister Agnes in which the latter said that "she (Mrs. Rhode) had more time than I have to take care of him." Anna Ramsey testified that she resided with Mrs. Rhode for about two years prior to her death; that Mrs. Rhode stated to her that the brother and sister of the plaintiff "carried him over in a basket, over to her on the farm, and said she didn't like to keep him but she didn't want to take him back." Anna Eggen testified that she was a neighbor of Mr. and Mrs. Rhode when they lived on the farm and knew them intimately. Referring to a conversation with Mr. Rhode she stated: "Well, one time he said he had to keep him (plaintiff) down there, because he could not live up to the other place (Petersons), because he never got the care he should have. You know children got to have something else beside bread and water." Olien Lillestol, a niece

of Mrs. Rhode, testified that during a visit in· the Rhode home in 1924 she heard a conversation between Mrs. Rhode and the mother of the plaintiff and that "Mrs. Rhode asked her to take the child home, because she was not well enough and too old to take care of a baby." Judge Lewis Larson who prepared the deeds transferring the properties from Hans Rhode to his wife testified that Mr. Rhode made no mention of having adopted or intending to adopt any child or of "any agreement with anyone as to the property." Tom Costello, administrator of the estate, testified that he talked with plaintiff and Agnes Peterson prior and subsequent to his appointment; that they made no mention of an "agreement to give all" of the property to plaintiff; that plaintiff "mentioned that he was to be left 80 acres in Lyons Township"; and that plaintiff stated that this promise was made by Mr. Rhode when he was sick in the hospital.

 Defendants have invoked the rule that a contract such as this, resting in parol and sought to be enforced after the death of the other contracting parties, must be established by clear, satisfactory and convincing evidence. Kroeger v. Warren, 31 S. D. 480, 141 N. W. 395; Annotation, 27 A.L.R. 1350 et seq. Viewing the record in the light of this rule, we find the evidence sufficient to warrant and sustain the finding that the contract to adopt existed. Defendants assail the testimony of Agnes Peterson. It is contended that her conduct in failing to advise her friends and relatives of the existence of the contract, in failing to insist upon legal adoption, and in failing timely to assert rights under the alleged contract, is inconsistent with her claim that an agreement to adopt was made. The establishment of the alleged contract does not depend entirely upon her testimony. Facts and circumstances brought out in the evidence including acts and admissions of the adopting parents furnish proof of its existence. If it can be said that the evidence as to such subsequent conduct would justify findings for the defendants, it cannot be said that the evidence is such that it would impel the trial court to so find. The function of this court is not to determine whether it would have made the same or similar fact determination, but simply to ascer-

tain whether or not there is evidence from which the trial court could properly draw its conclusions. Houck y. Hult, 63 S. D. 290, 258 N. W. 142. Consideration of the sufficiency of the evidence by an appellate court involves a decision on the record. Great weight must be accorded to the findings of the trial judge who has the opportunity which this court does not possess of seeing and hearing the witnesses. The superior advantage of the trial court in determining questions of fact is graphically pointed out in the case of Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118, 1120: "The bulk of the testimony was oral. * * * He [the trial judge] sees and hears much we cannot see and hear. We well know there are things of pith that cannot be preserved in or shown by the written page of a bill of exceptions. Truth does not always stalk boldly forth naked, but modest withal, in a printed abstract in a court of last resort. She oft hides in nooks and crannies visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or sneering tone, the heat, the calmness, the yawn, the sigh, the candor or lack of it, the scant or full realization of the solemnity of the oath, the carriage and mien. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson, or the itching over-eagerness of the swift witness, as well as honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify."

██ Defendants contend that Agnes Peterson and John N. Peterson were incompetent to testify under the provisions of Subdivision 2, Section 2717, Rev. Code 1919, in effect at the time of trial. So far as material to this action this statute provided that in civil actions or proceedings by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered for or against

them no person who has ever had any interest in the subject of the action adverse to the other party or to his decedent shall be allowed to testify against such other party as to any transaction whatever with or statement by the decedent, unless called to testify thereto by the opposite party. To disqualify a witness under this statute, it was necessary that his interest be adverse to that of the decedent or his personal representative or the party against whom his testimony was offered. In re Hornstra's Estate, 55 S. D. 513, 226 N. W. 740; Ekern v. Erickson, 37 S. D. 300, 157 N. W. 1062. It was the adverse interest and not adverse testimony that disqualified a witness to testify. Agnes Peterson was an heir of Hansina Rhode and if plaintiff did not prevail she would share in the estate. But her interest was not adverse to that of the defendants. John N. Peterson may have had an interest in the result of the action, but he never had an interest in the estate which is the subject of the action and this was conclusive of his competency under the statute.

The judgment appealed from is affirmed.

SMITH, P.J., and RUDOLPH, J., concur.

POLLEY and WARREN, JJ., not sitting.