IN RE ESTATE OF W. C. FREDERICK, ALSO KNOWN AS WILLIAM FREDERICK.
OLAF OLSON AND ANOTHER v. BURTON D. ROE.[1]

January 15, 1954.

No. 36,146.

[1]Reported in 62 N. W. (2d) 361.

56

*Severson & Severson* and *Baker & Carlson,* for appellants.
*Kief & Kief,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment entered February 3, 1953, adjudging that a contract between decedent, William C. Frederick, and Harry Roe, brother of Burton Roe, petitioner herein, for the adoption of the latter by decedent had been fully executed in the fall of 1907 and January 1908 at Faulkton, South Dakota; that decedent, during his lifetime, and, subsequent to his death intestate, his next of kin were estopped from denying such contract; and that the decree of distribution of decedent's estate, wherein all his real and personal property were assigned to petitioner as his sole heir at law, be in all respects affirmed.

On appeal it is contended that the alleged contract was not established by clear, cogent, and convincing evidence requisite under South Dakota law, which both parties concede governs the proceedings relative thereto.

■ Our primary function here is limited to a consideration of the evidence submitted and a determination of whether such evidence is sufficient to support the trial court's finding on the contract under requisite tests prescribed by South Dakota law. Johnson v. Olson, 71 S. D. 486, 26 N. W. (2d) 132; Johnston v. Eriksson, 71 S. D. 268, 23 N. W. (2d) 799; Walsh v. Fitzgerald, 67 S. D. 623, 297 N. W. 675; Rhode v. Farup, 67 S. D. 437, 293 N. W. 632; Gravning v. Olson, 62 S. D. 139, 252 N. W. 13. Reference may also be made to our decisions in like cases since the Minnesota rule appears to be the same as that of South Dakota. In re Estate of

Berge, 234 Minn. 31, 47 N. W. (2d) 428; In re Estate of Norman, 209 Minn. 19, 295 N. W. 63; In re Estate of Firle, 197 Minn. 1, 265 N. W. 818; Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455.

■ The uncontroverted testimony of Harry Roe, older brother of petitioner, was to the effect that petitioner was born at Manchester, Iowa, August 9, 1899; that his mother died there in 1902 and his father in 1907; that he then went to live with the witness at Manchester, where the witness with his wife and mother-in-law, Ida Coon, then made his home; that decedent and his wife, Belle Frederick, a cousin of petitioner and some years his senior, then resided on a farm near Faulkton; that a few years prior to 1907 they had visited Manchester and had seen petitioner; and that in 1907 they were childless and, hearing of the death of petitioner's parents, entered into correspondence with the witness and Ida Coon with a view to adopting petitioner.

He testified further that during his father's illness the Fredericks had written him to ascertain what would happen to petitioner in the event of the father's death; that they had stated in such correspondence that they wanted petitioner for their own son; that after the father's death there was further correspondence with him and they again stated therein that they wanted to adopt petitioner and to have full control over him without interference from other relatives; that after some discussion he decided that petitioner, then eight years of age, should be taken by Mrs. Coon to the Frederick home at Faulkton and left there for adoption, and that this was done in January 1908. Petitioner testified that thereafter until 1915 he lived with the Fredericks; that in 1915 he went to Iowa for a visit and was there for about a year and a half; that he then returned to the Fredericks and shortly thereafter joined the United States Navy during World War I; that after his discharge from the Navy he married and lived away from the Fredericks; that in the meantime Fredericks had moved to Granite Falls, Minnesota; and that he had visited them there each year, helping with the harvest and assisting them financially during the illness and at the death of Mrs. Frederick in 1936.

■ Harry Roe's testimony and that of petitioner found corroboration in the testimony of the Reverend W. Frank Flemming, a Congregational minister at Granite Falls; Pearl Dallman, a former housekeeper of the Fredericks; and Cora Allen, a neighbor of the Fredericks at Faulkton.

The Reverend Mr. Flemming testified that during the last illness of decedent he had visited him a few times at the hospital in January 1950; that on one such occasion decedent had introduced petitioner to the witness as a "kind of son of mine," stating: "I raised this boy; only boy I ever had"; and also that decedent may have referred to petitioner as his "adopted son."

Pearl Dallman testified that she had kept house for the Fredericks in 1934; that Mr. Frederick had then told her: "* * * I have an adopted son who is living in Milwaukee, Wisconsin," where petitioner was then residing; that petitioner returned each year to help the Fredericks; that he paid the medical expenses of Mrs. Frederick at the Mayo Clinic in Rochester shortly before her death; and that he had often paid for equipment on the farm.

Cora Allen testified by deposition that she knew the Fredericks during 1907 and 1908 just prior to petitioner's arrival at their home; that at that time they had told her that they "had agreed to adopt Burton"—that they were "going to legally adopt Burton" if they "could have full charge"—that they were going to take him as their own son; that in her presence and in the presence of Mrs. Coon, after her arrival at Faulkton with petitioner in January 1908, decedent had stated that he "had agreed to adopt Burton"; and that in 1938 he had stated to her that he was leaving "all he had" to petitioner.

In opposition to the foregoing, respondents submitted testimony that petitioner had always used the name "Burton Roe"; that he had designated his brothers and sisters as his "next of kin" in his war risk insurance policy; and that his brother Harry had signed the written consent requisite when he enlisted in the Navy in 1917.

From the foregoing resume of the evidence, we are convinced that the findings and judgment should be affirmed. It appears far

stronger than that submitted in a number of like cases in which we held the evidence was sufficient to support a finding that a contract for adoption existed (In re Estate of Firle, 197 Minn. 1, 265 N. W. 818; Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455; Laird v. Vila, 93 Minn. 45, 100 N. W. 656); and, likewise, in a number of cases where the supreme court of South Dakota determined a contract of adoption to exist. Walsh v. Fitzgerald, 67 S. D. 623, 297 N. W. 675; Rhode v. Farup, 67 S. D. 437, 293 N. W. 632; Gravning v. Olson, 62 S. D. 139, 252 N. W. 13.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.