IN RE ESTATE OF JOHN Z. ROWE.
ERMA E. KICKER v. ROGER ROWE, REPRESENTATIVE OF
ESTATE OF JOHN Z. ROWE, AND ANOTHER.

132 N. W. (2d) 180.

December 18, 1964—No. 39,326.

*King & Flora,* for appellant.
*Bradford & Kennedy, Charles R. Kennedy,* and *Don E. Kennedy,* for respondents.

THOMAS GALLAGHER, JUSTICE.

These proceedings involve an appeal by Erma E. Kicker to the District Court of Wadena County from a decree of the probate court of Wadena County making distribution in the estate of John Z. Rowe,

deceased.[1] Therein appellant sought to establish that she was the adopted child of John Z. Rowe and Ella Rowe, his wife, who had predeceased him; and that she had been omitted from the last will of John Z. Rowe through inadvertence or mistake. After trial in the district court, the latter made findings in substance as follows:

"Appellant was born June 13, 1906, the daughter of John and Harriet Sherwood. In March, 1909, she was taken into the home of decedent John Z. Rowe and his wife Eleanor Rowe. Appellant was known as Erma Rowe, and she was raised by decedent and his wife, and lived with them until her marriage, September 22, 1926. She was baptized on July 25, 1915, as 'Erma Irene', child of John Z. and Eleanor Rowe, born 9th day of June, 1906. The announcement of her marriage described her as the daughter of Mr. and Mrs. John Z. Rowe.

"John Z. Rowe did not adopt appellant by statutory adoption.

"Eleanor E. Rowe, also known as Ella Rowe, wife of decedent, died in 1951. Appellant petitioned for probate of her will and in that petition stated that the relationship of appellant to Eleanor E. Rowe was 'none.'

"In 1951, appellant sued John Z. Rowe, to recover for services rendered to the wife Eleanor Rowe, and recovered judgment against decedent for $4,150.54. In that action appellant testified that she had never been adopted by decedent, and that she was not a daughter of decedent. She did not testify that there had ever existed a contract by John Z. Rowe to adopt her.

"Decedent did not agree to or contract to adopt appellant; appellant was never adopted by decedent; appellant is not a child of decedent, and is not entitled to share in his estate."

Based upon such findings the court affirmed the decree of distribution. In a memorandum accompanying this order, it stated:

---

[1] In In re Estate of Rowe, 262 Minn. 13, 113 N. W. (2d) 352, it was held that the appellant having asserted her claim in probate court by filing objections to the decree and having had an adverse ruling thereon could appeal to the district court, notwithstanding fact that she presented no evidence in the probate court proceedings. This appeal is from the subsequent district court proceedings.

"Appellant introduced evidence tending to prove statements by decedent of his intention to adopt her. This evidence will not prove a contract to adopt. * * *

\*    \*    \*    \*    \*

"* * * Here there is no evidence of any contract between decedent, and the natural parents of appellant. The evidence shows no more than that appellant was received into the Rowe home, went by the name of Rowe, lived with Rowes until her marriage and 'was treated by them with the same kindness and consideration as if she were their natural child.' Proof of those facts does not prove a contract to adopt. In re Estate of Norman, 209 Minn. 19, 295 N. W. 63; In re Estate of Berge [234 Minn. 31, 47 N. W. (2d) 428]."

The appeal here is from a subsequent order of the district court denying appellant's motion for amended findings or for a new trial. On appeal she contends that the evidence in the district court proceedings established as a matter of law that a contract of adoption had been entered into by the Rowes under which she was to be their adopted child.

The evidence referred to may be summarized as follows: Appellant's evidence tended to show that her earliest recollection of her association with the Rowes was a Christmas celebration, while she was still very young, when they had given her presents; that throughout her school attendance all records and reports therein made upon information furnished to the school authorities by the Rowes listed her as their child; that on July 25, 1915, when she was 9 years of age, she had been taken by the Rowes to be baptized and that the baptismal certificate made up at that time upon information furnished by them described her as their child; that in September 1926, at the time of her marriage to Gustav Kicker, the Rowes had prepared and mailed out wedding announcements wherein she was described as their daughter; that upon her marriage she was designated as Erma E. Rowe in her wedding certificate; that until she was 16 years of age she had always believed that she was the natural daughter of the Rowes and that throughout the years while they were alive she had always addressed them as "mama and papa." A number of other witnesses, mostly

relatives of the Rowes, testified that throughout the years the Rowes had always held out appellant as their daughter; and that at all times while she had lived in the area she had been known throughout the community as the daughter of the Rowes.

Mr. Henry Gossell testified that Mrs. Ella Rowe was his father's sister; that he had lived a short distance from the Rowe home for many years; that he had first seen appellant when she was about 3 and he about 9 years of age; that at that time he had heard the Rowes state that they intended to adopt her; and that over a period of years he had heard Mr. Rowe tell his father on several occasions that he had always intended to adopt appellant but had never had the money to go through with it.

The will of John Z. Rowe was executed by him on December 12, 1927. In 1929 he was found to be mentally incompetent and confined to the State Hospital at Fergus Falls. At that time a guardian was appointed for him and he remained under such guardianship until his death on October 18, 1959. Following his confinement to the hospital, from 1933 until December 20, 1951, the date of Mrs. Rowe's death, appellant expended a substantial amount of her time and energy in looking after Mrs. Rowe; in preparing her meals, changing her linens, and looking after her needs during times in which she suffered heart attacks or was otherwise bedridden. On December 24, 1951, appellant instituted an action against W. J. Browne as general guardian of John Z. Rowe for the reasonable value of the services which she had furnished Ella Rowe and for sums advanced by her to pay for food and other necessities. In this action in the District Court of Wadena County, appellant recovered the sum of $4,150.54 for such services and advances. Therein she had testified that she was not the daughter of the Rowes, that she had never been adopted by them, and that she had never occupied the relationship of daughter to them. In the present proceedings, upon cross-examination appellant likewise testified that she had not been "lawfully adopted" by the Rowes.

■ We are convinced that the evidence is adequate to sustain the court's finding that no contract for adoption was established by appel-

lant.[2] While there is some evidence that the Rowes treated her as their natural child and at various times expressed their intention to adopt her, there is nothing to establish that either of them had ever promised or contracted to do so in consideration of their being granted her custody. Rather, the evidence establishes merely that with the consent of appellant's parents the Rowes had taken her into their home to care for her as they would have cared for a natural child, and there is substantial evidence that she understood this and did not regard herself as their adoptive child. The rules governing this kind of situation have been expressed by this court on a number of occasions. Thus, in In re Estate of Hack, 166 Minn. 35, 37, 207 N. W. 17, 18, it was stated:

"* * * [W]henever, in the absence of an adoption pursuant to some legislative enactment, a child, received from the natural parents into the home of foster parents and treated by the latter as a natural child, has been allowed to share in the estate left by the foster parents, *it was only where a contract to legally adopt such child or to give it a share in such estate is clearly proven.* * * *

"* * * Simply that a child of another is received into a home, cared for and educated until the age of 16 years, cannot well indicate that such a child has further claims upon those who so took it in." (Italics supplied.)

See, also, In re Estate of Berge, 234 Minn. 31, 47 N. W. (2d) 428; In re Estate of Norman, 209 Minn. 19, 295 N. W. 63.

■    There are a number of decisions of this court where it has been held that the evidence compelled a finding of a contract to adopt. In each of such decisions, however, there was evidence of an express or implied promise by the adoptive parents to the natural parents or one of them, or to the legal custodian of the child, that the child was to be taken by the adoptive parents for adoption. Thus, in Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455, there was evidence of a written agreement for adoption (subsequently lost) under which the adoptive par-

---

[2] It is undisputed that there was no attempt to comply with the adoption proceedings prescribed by Minn. St. c. 259.

ents had received the child from the child's mother in consideration of their promise to make the child their heir. In Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421, there was evidence that the adoptive parents had promised the child's dying mother that they would adopt her child. In In re Estate of Firle, 197 Minn. 1, 265 N. W. 818, a contractual obligation to adopt a child was implied from evidence that it was the custom of the orphanage from whose custody the child had been taken to release a child in its custody only for purposes of adoption. In In re Estate of Frederick, 241 Minn. 55, 62 N. W. (2d) 361, there was evidence that the adoptive parents had corresponded with a brother of the child, in whose care the child had been placed, and had promised him that the child was to be taken for adoption. Likewise, in foreign jurisdictions where this question has been considered, the decisions have been in accord with the rules above described. See, 2 C. J. S., Adoption of Children, § 26, p. 396.[3]

Affirmed.

---

[3]In Missouri, the supreme court has held that a contract for adoption may be established by evidence such as was presented here, Drake v. Drake, 328 Mo. 966, 43 S. W. (2d) 556; although in a more recent decision, Hogane v. Ottersbach (1954), 269 S. W. (2d) 9, the Missouri court appears to have retracted somewhat from this position. In Texas, Cavanaugh v. Davis, 149 Tex. 573, 235 S. W. (2d) 972; Illinois, Monahan v. Monahan, 14 Ill. (2d) 449, 153 N. E. (2d) 1; and Michigan, Roberts v. Sutton, 317 Mich. 458, 27 N. W. (2d) 54, the courts appear to recognize that an abortive attempt to adopt a child may be regarded as evidence of a contract for adoption under rules of equitable estoppel.