## BELLA R. WYMAN AND OTHERS v. TRUSTEES OF WESTMINSTER PRESBYTERIAN CHURCH OF MINNEAPOLIS AND OTHERS.[1]

March 27, 1936.

Nos. 30,697, 30,702.

[1]Reported in 266 N. W. 165.

*James E. O'Brien* and *Arthur P. Jensen,* for appellants Bella R. Wyman, Katherine Wyman Vaughn, and Prudence W. Ladd.

*Cobb, Hoke, Benson, Krause & Faegre,* for appellant Empire National Bank and Trust Company of St. Paul.

*Kingman, Cross, Morley & Cant* and *Harry E. Howlett,* for respondent Trustees of Westminster Presbyterian Church of Minneapolis.

LORING, JUSTICE.

This is a suit by the heirs of Oliver C. Wyman to have the Trustees of the Westminster Presbyterian Church of Minneapolis declared to be trustees of a resulting trust in their favor in funds left as a bequest to the church in Wyman's will. The defendant church prevailed below.

Oliver C. Wyman's will was admitted to probate in November, 1923. By a codicil he bequeathed to the Trustees of the Westminster Presbyterian Church of Minneapolis $500,000, payable either in cash or, in the discretion of his executors, in securities belonging to his estate, to be used by the said church in the discretion of its board of trustees for the construction of a building or buildings to be used for hospital purposes in the city of Minneapolis in connection with that certain hospital property owned by

the church known as the Abbott Hospital. He provided in the codicil that if in the judgment of the trustees all of the legacy could not be used advantageously for a building, such portion thereof as in the judgment of the trustees should be used, might be expended for the purchase of additional land appurtenant to the hospital, for additions to or improvements upon the present property, or for the establishment of an endowment fund in connection with said hospital.

In September, 1924, a decree of partial distribution assigned "to the Trustees of the Westminster Presbyterian Church, a corporation of Minneapolis, Minnesota, the sum of $500,000 to be used by said church in its discretion by its Board of Trustees in accordance with the terms and provisions of said will, payable in cash or in securities taken from said estate in accordance with the terms of said will and codicils thereto." In the recitals preceding the distributing clauses in the decree and which it termed its findings of fact the probate court stated that Wyman disposed of his estate as follows:

"* * * He gave and bequeathed the sum of $500,000 to the trustees of the Westminster Presbyterian Church of Minneapolis, Minnesota, payable either in cash or in securities, the same to be used by said church in the discretion of its Board of Trustees *for the construction of a building or buildings to be used for hospital purposes* in the city of Minneapolis in connection with that certain hospital now owned by said church and commonly known and designated as the Abbott Hospital." (Italics supplied.)

In its "conclusions of law," after stating that the will and codicil were valid and operative in the state of Minnesota and that the legatees and devisees thereunder were entitled to have the estate of said deceased distributed to them in accordance with the terms of the will and codicil, it—

"ordered, adjudged and decreed that the portion of the personal estate hereinbefore described now remaining belonging to the estate of said deceased, be and the same is hereby assigned and distributed as follows, viz.: * * *

"To the Trustees of the Westminster Presbyterian Church, a corporation of Minneapolis, Minnesota, the sum of five hundred thousand dollars ($500,000) to be used by said church in its discretion by its Board of Trustees in accordance with the terms and provisions of said will, payable in cash or in securities taken from said estate in accordance with the terms of said will and codicils thereto."

No appeal was taken from this decree.

In 1858, under c. 36 of the Revised Statutes 1851 of the Territory of Minnesota, "The Trustees of the Westminster Presbyterian Church of Minneapolis" was organized as a religious corporation. An unimportant amendment to the articles or certificate of incorporation was adopted in 1905 and 1906. Westminster Church since its organization has been affiliated with the general organization of the Presbyterian Church in the United States, and under the rules and customs of that church one of its affiliate churches may, and frequently does, carry on activities other than religious services and may and does in many instances provide and support institutions and activities not religious, such as the activities usually carried on by an institutional church. The Westminster Church has done so. Among other things it had and for a long time prior to Wyman's death operated as a part of its church activities a hospital known as "Abbott Hospital," composed originally of an institution donated by William H. Dunwoody and later enlarged by donation from T. B. Janney.

The trustees turned into cash the securities which were distributed to them by the executors and purchased land appurtenant to the hospital at a cost of $45,000. Building costs were high, and from time to time the trustees engaged architects and endeavored to plan a building which would be economical to operate and suitable for the purposes of the hospital. Bella R. Wyman, widow of Oliver, was made a member of the committee which was in charge of these plans. Successively plans were submitted which called for the investment of more money than there was in the Wyman donation. Later it was determined that it was not practicable to operate a

hospital without the establishment of an adequate endowment fund. An effort was made to raise such a fund outside of the Wyman donation. Due to the financial crisis commencing in 1929, less than $60,000 was the result of this effort, and in 1930 the trustees set aside $250,000 of the fund donated by Wyman as an endowment fund for Abbott Hospital, and it was determined that the remainder of the fund, which exceeded $300,000, should be used for the erection of a building on the site already purchased. This arrangement was not satisfactory to Mrs. Wyman and two of her daughters. It is their position that such allocation was a diversion of the gift to unauthorized purposes. Accordingly they commenced this suit to recover seven-ninths of the Wyman bequest and its earnings as a resulting trust for themselves. The third daughter, Adelaide W. Partridge, refused to join in the action, and she is made a defendant but has joined as an appellant here. The defendant Minnesota Loan and Trust Company, as trustee, is the residuary legatee under the Wyman will. The suit resulted in an order for judgment against the plaintiffs. They moved for amended findings or a new trial and have appealed from the order denying their motion. This court does not review a motion for amended findings, and after a blended motion we consider only the motion for a new trial within the scope of the rule laid down in Sheffield v. Clifford, 186 Minn. 300, 243 N. W. 129.

It is conceded by all parties that the decree of partial distribution determines the validity of the bequest and the power of defendant church to take and use it for the purpose directed by the decree; hence there is no question involved as to whether the will created a trust. The decree has determined that the bequest was a gift, and, there having been no appeal, that determination has become final. The only questions presented to this court are, *first,* the proper construction and scope of the decree, and, *second,* whether the gift failed and in consequence whether the defendant church holds the bequest for the benefit of plaintiffs as the trustee of a resulting trust.

■ If there were no previous reference to the bequest and if the probate court had decreed the sum of $500,000 to the church to be used by said church—

"In the discretion of its Board of Trustees [in the language of the will] for the construction of a building or buildings to be used for hospital purposes in the city of Minneapolis, in connection with that certain hospital property now owned by said church and commonly known and designated as the Abbott Hospital. * * * If in the judgment of said Trustees all of the above legacy could not be used advantageously for buildings at or about the time the legacy is received, then such portion thereof as in the judgment of the Trustees should be used may be expended for the purchase of additional land appurtenant to the said hospital, for additions to or improvements upon the present property, or for the establishment of an endowment fund in connection with said hospital."—

there would be no question but that the church was within the purposes of the gift in the establishment of an endowment fund. The decree in effect incorporated into itself the language just quoted from the will and should be so read. Therefore we are confronted with the question of whether the recital in the so-called finding of fact modifies the later language as a controlling interpretation. Plaintiffs claim that it does and cite the case of Ladd v. Weiskopf, 62 Minn. 29, 32, 64 N. W. 99, 100, 69 L. R. A. 785. In that case one Weiskopf left a will devising certain lands to his wife for the remainder of her natural life and after her death to their children, naming them, or "to such of them as shall be living at the time of their said mother Rosa's death." The probate court made a decree of distribution reciting [62 Minn. 33] "that by his said last will and testament, testator devised the above-described parcels * * * to Rosa Weiskopf for life, and the remainder therein * * * to his children [naming them] share and share alike." Then it followed with the provision:

"It is ordered, adjudged and decreed: that the above-described real estate be, and the same hereby is, assigned to the said devisees, according to the terms and provisions of said last will and testament of the deceased."

The decree was never appealed from. This court held that the decree was to be construed as if the recital in the so-called finding

of fact were a part of the provisions of the decree assigning the property to the devisees and that the phrase in the decreeing clause, "according to the terms and provisions of said last will," meant as such provisions had been construed in the findings. Unless so construed "the decree amounted to an adjudication of nothing." By so construing the decree this court,. speaking through Mr. Justice Mitchell, concluded [62 Minn. 35]:

"It is a clear and explicit adjudication of the main question presented to him, to wit, who were entitled to the property under the terms of the will."

And that it was a compliance with the statute which requires:

"In such decree the court shall name the persons and the proportions or parts to which each is entitled."

And that whether or not the decree was in accordance with the right construction of the will it was final and binding upon all persons interested in the estate. It is quite clear that as so construed the decree determined the persons to whom the property should be distributed and the character of the estate which each should receive, and that, without resort to the recital in the findings of fact, it made no such determination. The questions determined were those which the probate court was bound to determine in order properly to assign the property of the estate. They were questions wholly within its jurisdiction. Their determination was binding upon all interested parties. Had the decree followed the terms of the will no determination of heirship in the remainder after termination of the widow's life estate could have been made, because until her death it would not be known who would survive her. So the construction made was necessary to the entry of the decree insofar as it determined the heirship of the children.

As said by Mr. Justice Mitchell again speaking for this court in Hershey v. Meeker County Bank, 71 Minn. 255, 268, 73 N. W. 967, 969:

"It is undoubtedly true that the probate court had jurisdiction to determine who were entitled to Martin's property as devisees or

legatees, and, as incidental and ancillary to the determination of that question, to construe his will. But the decree is a conclusive adjudication that the persons to whom the distribution is made are the only persons entitled to the property distributed as devisees or legatees under the will, *and of that fact only. And the construction which the court placed on the will is only effectual and operative as to that question. For any other purpose, or upon any other question, it is coram non judice.*" (Italics ours.)

In the case at bar we think that the probate court was only endeavoring to determine the property which passed by the will and the persons to whom it passed; as well as the validity of the gift, and we think that Dunnell in his Minnesota Digest (2 ed. & Supps. 1932, 1934) § 3658, p. 169, has well expressed the limit upon the probate jurisdiction when he said:

"It is not necessary for the court to construe the will for the purpose of determining all the terms and conditions under which the distributees take their shares."

We think that in making the recital in the so-called finding of fact the court here was not attempting in any way to construe the terms or conditions or purposes of the gift. It was merely reciting the reasons which led it to make its decree. This court seems to have approved probate courts' decrees which do not attempt to construe the terms or conditions of a legacy but which refer to the language of the will. Mingo v. Huntington, 92 Minn. 13, 15, 99 N. W. 45. In effect such a decree incorporates the testator's language and is as effective as if that language were set out in full. It need not determine the effect of the conditions imposed upon the legatees after receipt of the legacy. Such effect lies beyond the scope of its jurisdiction.

In re Corse's Will, 195 Wis. 88, 217 N. W. 726, 729, was a case in which the county court, exercising probate jurisdiction in that state, in the recitals in its decree stated that widow had a life estate in the entire income of the property of the estate. The "decretive" part of the decree followed the language of the will, which, though held by the court to be ambiguous, when properly

construed, gave the widow such income only until a named daughter became 20 years of age. This decree was not appealed from, and it was claimed that it was *res adjudicata* and gave the widow the entire income for life. The Wisconsin court, after a careful examination into the law of judgments, held otherwise. The court said [195 Wis. 97]:

"While not necessary, especially in actions at law, it is common practice to precede the sentence of the law with a recital of the precedent facts or proceedings upon which the sentence of the law is based. These recitals, however, are no part of the sentence of the law, but rather a review of the proceedings which authorized the sentence. * * * these recitals * * * merely show justification for pronouncing the sentence of the law. * * * At any rate, in pronouncing the sentence of the law the court does not construe the will in accordance with its pre-asserted views, and, if it had, it would have been error. If this judgment be ambiguous it must, if reasonably possible, be so construed as to exclude error. Maxcy v. McCord, 120 Wis. 571, 98 N. W. 529, 923. We know of no compelling principle requiring a construction of this judgment tainting it with error and defeating the manifest will and purpose of the testator. We hold that the final decree of November 5, 1918, did not award the widow a life estate."

What the Wisconsin court there said is quite appropriate to the case before us. If there is ambiguity or conflict in the terms of the decree it should not be so construed as to defeat the manifest purpose of the testator.

We think it was not necessary for the probate court to construe the conditions of this gift in order to perform all the purposes of its probate jurisdiction and that it made no attempt to do so in the mere recital contained in the so-called finding of fact, but that its purpose was, as stated in the decreeing clause, to assign the property according to the terms of the will itself, leaving the construction of those terms to other tribunals in case they were ever called in question. The proper construction of the decree does not defeat the right of the church to do just what it proposes to do.

■ We come to the question of whether the gift failed. In the light of all the circumstances shown by the record we see no failure to devote the gift to the purpose stated by the testator. In their attempts to devote the whole gift to a building the trustees were constantly confronted by prohibitive costs and in their discretion were justified in postponing construction until more favorable conditions prevailed. The terms of the gift gave them discretionary powers. The result shows these powers were wisely exercised. When conditions changed they changed their plans to conform, remaining always within the terms of the gift as we construe it.

The order appealed from is affirmed.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.

[1]Reported in 266 N. W. 161, 267 N. W. 426.