In the Matter of the Trusteeship under Subdivision 4, 5, 6, 7, and 8 of Paragraph (c) of Article IV of the Last Will and Testament of Herschel V. Jones, Deceased, for the Benefit of Paul M. Jones and Frances P. Leslie.

Frances J. LESLIE, et al., Appellants,

v.

MINNEAPOLIS SOCIETY OF FINE ARTS, et al., Respondents,

First National Bank of Minneapolis, Petitioner, Respondent,

State of Minnesota, Respondent,

Minneapolis Foundation, Respondent,

Emily Jones Snyder, Respondent,

Judith A. Jones, Respondent,

Estate of Harriet Weed, Respondent.

No. 47129.

Supreme Court of Minnesota.

Oct. 21, 1977.

---

Gray, Plant, Mooty, Mooty & Bennett and Noel P. Muller and Richard A. Moore, Jr., Minneapolis, for appellants.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty and Andris A. Baltins and Marcy S. Wallace, Minneapolis, for Mpls. Soc. F. A.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, and Faith L. Ohman, Minneapolis, for 1st Nat. Bk., Mpls.

Warren Spannaus, Atty. Gen., Stephen F. Befort, Sp. Asst. Atty. Gen., St. Paul, for State.

Faegre & Benson and Richard M. Ihrig, Minneapolis, for Mpls. Foundation.

Rider, Bennett, Egan, Johnson & Arundel and Alfred Sedgwick, Jr., Minneapolis, for Emily Snyder.

Jack Brown, Minneapolis, for Judith Jones.

Lindquist & Vennum and John A. Forrest, Minneapolis, for Estate of Harriet Weed.

ROGOSHESKE, Justice.

This appeal arises from a proceeding initiated by the First National Bank of Minneapolis to determine how it, as trustee, should administer a portion of a testamentary trust created under the will of decedent, Herschel V. Jones. The district court determined, in part, that the remainder interest in this portion of the trust was to pass through the residuary clause of decedent's will for the benefit of respondents Minnesota Society of Fine Arts and Minnesota Orchestral Association. In so holding, the district court set aside part of a 1929 probate court decree which provided that the remainder interest would pass to decedent's heirs in accordance with the laws governing intestacy. Appellants are the surviving children and other intestate heirs of decedent. We reverse and remand on the ground that the district court was powerless to alter the terms of the decree since the probate court possessed subject matter jurisdiction in 1929 to determine the remainder beneficiaries of the testamentary trust.

Herschel V. Jones died testate on May 24, 1928, and was survived by his widow and seven children. His last will and testament was admitted to probate by the Hennepin County Probate Court, and on December 5, 1929, the probate court entered its decree for settlement and distribution of decedent's estate.

Under the provisions of the will, 1,170 shares of stock in the Journal Printing Company were placed in trust with the First Minneapolis Trust Company (now First National Bank of Minneapolis) for the benefit of decedent's three daughters and one of his sons, Paul M. Jones.[1] Each of the daughters was to receive a percentage of the income generated by the testamentary trust for the duration of her life, and upon the death of each daughter, a portion of the trust principal was to be distributed according to the terms of the will.

This appeal is specifically concerned with the will provisions governing the share of Paul M. Jones and his family in the testamentary trust (hereinafter the "Paul M. Jones fund"). The will first directed that Paul M. Jones was to receive 23½ percent of the trust income for life, provided that such sum did not exceed $20,000 per year. After the death of Paul, the will directed that his widow and any surviving children were to be entitled to the same annuity for the duration of their lives. The will made no disposition, however, of the remainder interest in the Paul M. Jones fund, representing 23½ percent of the testamentary trust principal, upon the death of Paul, his wife and children.[2] Consequently, when

---

1. At the time of his death, Herschel Jones was the sole owner of the Journal Printing Company and held 4,000 shares of capital stock valued at $2,885,937.37. The will provided that 2,005 shares were to be placed in another testamentary trust for the benefit of decedent's widow, and decedent further bequeathed 275 shares to each of his three sons, who had not been included in the testamentary trust established for the three daughters and Paul M. Jones. Because the estate had inadequate cash to satisfy claims made against it without liquidating the stock, decedent's widow and all of the seven children agreed at the time of probate that the Journal Printing Company would assume responsibility for these debts and that the shares held by them would be subject to a lien.

2. The specific provisions which established the Paul M. Jones fund are found in Art. IV, subd. (c), paragraphs 4(a, b, d) of the will and read in relevant part as follows: "(a) To pay to my son PAUL M. JONES twenty-three and one-half per cent. (23½%) of said net income, *provided, however,* that, in case said twenty-three and one-half per cent. (23½%) of the net income shall exceed twenty thousand dollars ($20,-000.00) in any year after the establishment of

the will was admitted to probate in 1929, the court concluded as a matter of law that decedent, Herschel Jones, had died intestate with respect to the remainder interest in the Paul M. Jones fund. The probate court then ordered this remainder interest to be distributed as follows:

"Upon the death of the widow, if any, and of all of the surviving children of said Paul M. Jones, * * * twenty-three and one-half per cent (23½%) of [the testamentary trust] principal shall then and thereupon be distributed by said trustee to the surviving children of said decedent Herschel V. Jones, and to the lawful issue, by right of representation, of any deceased child of his, share and share alike, in accordance with the statutes of the State of Minnesota governing the descent and distribution of the estates of persons dying intestate."

Frances J. Leslie is now the sole survivor of decedent's three daughters, who, together with Paul Jones, were the beneficiaries under the testamentary trust. Paul Jones died on August 1, 1974, and was survived by his widow, Judith A. Jones, and his only child, Emily Jones Snyder.[3]

Because the trustee, First National Bank of Minneapolis, was uncertain as to how the Paul M. Jones fund should be administered, the present proceeding was brought in district court for a judicial construction of the trust instrument, the probate court decree, and applicable law. On July 21, 1976, the district court found, as the probate court had also determined in 1929, that decedent's will had failed to dispose of the remainder interest in the Paul M. Jones fund. The district court went on to hold, however, that the probate court had been without subject matter jurisdiction to award the remainder interest to decedent's children by the law of intestacy. The district court then instructed the trustee as follows:

"The trustee and all other interested parties are instructed that upon the death of the survivor of Emily Jones Snyder and Judith A. Jones, the Paul M. Jones Fund shall terminate and the assets shall be distributed to the trustee of the trust established pursuant to the residuary clause * * * of the Will."

said trust fund, the excess shall be paid and disposed of by my said trustee as provided in the next following sub-division (b). * * *

"(b) If said payment of twenty thousand dollars ($20,000.00) to my son PAUL shall be less than twenty-three and one-half per cent. (23½%) of said net income, the remainder of twenty-three and one-half per cent. (23½%) of said income, after the deduction of said annuity of twenty thousand dollars ($20,000.00), shall be paid by said trustee to THE JOURNAL PRINTING COMPANY as long as said company is controlled by the members of my family * * *. In case The Journal Printing Company shall pass out of the control of members of my family, then said excess income shall be paid and transferred by said trustee to the principal account of THE HERSCHEL V. JONES FUND.

*       *       *       *       *       *

"(d) After the death of my said son Paul M. Jones, my said trustee, out of the net income derived from said trust fund, shall pay to his widow, if one survive him, the annual sum of four thousand dollars ($4,000.00) at such convenient intervals as she may suggest, as long as she shall live; and said trustee shall also pay to or for the benefit of each lawful child of my said son him surviving the sum of fifteen hundred dollars ($1,500.00) per year until such child shall attain full age, and thereafter said trustee shall pay to each such child, in each year, as long as he or she shall live, his or her proportionate share of sixteen thousand dollars ($16,000.00) * * *. Upon the death of said widow, or of any such child, or in case no widow, or lawful child or children, and in either such event, shall survive my said son, the annuities herein specified to be paid to such widow or surviving child or children, respectively, shall thereafter be paid by said trustee to THE JOURNAL PRINTING COMPANY as long as it shall be controlled by members of my family, for the uses and purposes specified in sub-division (b) of this paragraph; and in case The Journal Printing Company shall pass out of the control of members of my family, then said excess income shall be paid and transferred by said trustee to the principal account of THE HERSCHEL V. JONES FUND [established for the benefit of the Minneapolis Foundation]."

3. The 1,170 shares constituting the trust principal were sold in the late 1930's for $817,793.20. Pursuant to decedent's will, portions of the principal were distributed upon the deaths of the two daughters. At the present time, 47 percent of the trust principal remains, which is still being held for the benefit of Frances J. Leslie and the Paul M. Jones fund.

Frances J. Leslie and other intestate heirs of decedent have now appealed to this court, claiming that the district court erred in setting aside the decree of the probate court which had arguably awarded the remainder interest to them.[4] Respondents Minnesota Society of Fine Arts and Minnesota Orchestral Association are the beneficiaries of the trust created by the residuary clause in decedent's will. The trustee has no interest in this appeal outside of being concerned with how the Paul M. Jones fund is ultimately to be administered.[5]

We emphasize at the outset that this appeal is concerned solely with whether the probate court had subject matter jurisdiction to dispose of the remainder interest of the Paul M. Jones fund and not with whether that court otherwise disposed of this interest correctly in accordance with decedent's will. This distinction is important because we believe the probate court erred in awarding the remainder interest to decedent's intestate heirs when the will contained a valid residuary clause that established a charitable trust for the benefit of respondents. Since respondents did not appeal the decree when it was entered in 1929,[6] the erroneous decree is nevertheless binding unless the probate court lacked the jurisdiction needed to dispose of the remainder interest. *Bengtson v. Setterberg,* 227 Minn. 337, 35 N.W.2d 623 (1949); *Greenwood v. Murray,* 26 Minn. 259, 2 N.W. 945 (1879).

■ The jurisdiction of the probate courts at the time decedent's will was pro-

bated derived from the then Minn.Const. art. 6, § 7, which provided in relevant part:

"* * * A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction except as prescribed by this Constitution." [7]

Although the express wording of this provision conferred jurisdiction upon probate courts to administer the estates of deceased persons, the term "estate" was not more specifically defined. The complete extent of probate court jurisdiction has therefore been periodically defined by statute within the general power conferred by the constitution. See, *In re Estate of Peterson,* 198 Minn. 45, 268 N.W. 707 (1936). As we further observed in *Fitzpatrick v. Simonson Bros. Mnfg. Co.,* 86 Minn. 140, 146, 90 N.W. 378, 380 (1902), the probate court's power is plenary when acting within its subject matter jurisdiction:

"* * * The probate forum is often unadvisedly spoken of as of limited jurisdiction, but the powers of this court are not only general, but plenary, in cases where it is authorized to act, and the term 'limited jurisdiction,' when appropriate, cannot be used in any restrictive or narrow sense."

Probate courts thus have the constitutional power to render binding in rem judgments affecting the estates of deceased persons that cannot be collaterally attacked unless there is a jurisdictional defect appearing on the face of the record. See, *In re Guardianship of Hudson,* 226 Minn. 532, 33 N.W.2d

---

4. There are at least 31 intestate heirs and other interested parties who have a potential claim to the remainder interest.

5. Pursuant to Minn.St. 501.79, subd. 2(c), the attorney general also made a formal appearance in this appeal as the representative of the ultimate and indefinite charitable beneficiaries of the remainder interest in the Paul M. Jones fund. Since the interests of the ultimate charitable beneficiaries are identical to those of the Minnesota Society of Fine Arts and the Minnesota Orchestral Association, the attorney general has urged an affirmance of the district court's decision.

6. At the time decedent's will was probated, Mason St.1927, § 8985(2) provided that "no

appeal from an order, judgment, or decree shall be taken after six months from the entry thereof."

7. Similar provisions are now found in Minn. Const. art. 6, § 11, and as the following language indicates, probate courts now have the express power to administer trust estates: "Original jurisdiction in law and equity for the administration of the estates of deceased persons and all guardianship and incompetency proceedings, *including jurisdiction over the administration of trust estates* and for the determination of taxes contingent upon death, shall be provided by law." (Italics supplied.)

848 (1948); *Davis v. Hudson,* 29 Minn. 27, 11 N.W. 136 (1881).

In a number of areas, probate courts possess exclusive subject matter jurisdiction which is separate and distinct from the jurisdiction of the district courts. The most obvious function of the probate court, both in 1929 and presently, is to distribute the assets of a decedent's estate by determining those persons entitled to take under a will. *Murray v. Calkins,* 191 Minn. 460, 254 N.W. 605 (1934). See, also, Minn.St. 524.3–105; Mason St.1927, § 8879. Probate courts also have, for example, the exclusive power to admit a will and to appoint a representative. On the opposite side of the spectrum, probate courts have no jurisdiction to consider issues that are unrelated to the administration, settlement, or distribution of a decedent's estate. As we have frequently held, probate courts have no "independent jurisdiction in equity or at law over controversies between the representatives of the estate, or those claiming under it, with strangers claiming adversely, [or] of collateral actions." *Wilson v. Erickson,* 147 Minn. 260, 261, 180 N.W. 93 (1920). See, also, *Minnesota Odd Fellows Home v. Pogue,* 245 Minn. 539, 73 N.W.2d 615 (1955); *Comstock v. Matthews,* 55 Minn. 111, 56 N.W. 583 (1893).

As a general rule, a probate court also has jurisdiction to exercise all incidental powers which are necessary for an effective exercise of those powers committed exclusively to its jurisdiction. This jurisdiction to exercise incidental powers is frequently concurrent with the jurisdiction of the district courts. For example, a probate court has the incidental power to construe the provisions of a will, a power which may also be exercised by a district court. *State v. Ueland,* 30 Minn. 277, 15 N.W. 245 (1883). Perhaps the most interesting example of an incidental power occurred in *Vesey v. Ves-*

ey, 237 Minn. 10, 53 N.W.2d 809 (1952), where we held that a probate court had subject matter jurisdiction to determine whether a decedent's death had been feloniously caused by his widow, a fact which, if proven, would preclude her from taking an inheritance under the decedent's will.[8] The rule which emerges from these cases and others is that "probate courts possess superior and general jurisdiction, and have implied power to do whatever is reasonably necessary to carry out powers expressly conferred." *Fiske v. Lawton,* 124 Minn. 85, 91, 144 N.W. 455, 458 (1913); *State ex rel. Williams v. Probate Court of Lyon County,* 140 Minn. 342, 168 N.W. 14 (1918).

On a number of occasions, we have applied the preceding principles in the specific context of a probate court's subject matter jurisdiction over dispositions by trust. Thus, we have held that a probate court had the incidental power to determine the validity of inter vivos trusts when this determination had an effect on, and was an incident to, probating a decedent's estate. *In re Estate of O'Connor,* 191 Minn. 34, 253 N.W. 18 (1934). But we also consistently have held, that at the time decedent's will was probated, it was beyond the constitutional jurisdiction of a probate court to construe the terms of a testamentary trust when no questions of entitlement were present,[9] *Melby v. Nelson,* 169 Minn. 273, 211 N.W. 465 (1926), and that probate courts have never had the authority to direct a trustee how to manage the assets of a testamentary trust once they have been transferred to the trust. *Wyman v. Trustees of Westminster Presbyterian Church,* 197 Minn. 62, 266 N.W. 165 (1936).

We are persuaded that it is more consistent with the law, as it existed in 1929, to hold that the probate court had subject matter jurisdiction to construe the provisions of the Paul M. Jones fund for the

8. At the time this case was considered, Minn. St.1974, § 525.87 provided in part: "No person who feloniously takes or causes or procures another so to take the life of another shall inherit from such person * * *." This statute has since been repealed by L.1975, c. 347, § 144, and has been replaced with Minn.St. 524.2–803.

9. Apart from changes in the constitution (see, footnote 7, *supra*), there is now no doubt that the statutes give both probate and district courts concurrent jurisdiction to construe the terms of a testamentary trust. See, Minn.St. 524.1–302.

necessary purpose of completely distributing the estate of decedent, Herschel Jones. It is at first apparent that the only construction made by the probate court was a simple determination that the trust did not specify who was entitled to the remainder interest. In a sense, this was not even a construction of a testamentary trust, for the operative provisions of the trust said nothing. More importantly, it was necessary for the probate court to determine who was entitled to the remainder interest in the Paul M. Jones fund. When a testamentary trust fails to provide for the disposition of the remainder interest, the principal reverts to the settlor by operation of law, which in this case was decedent's estate. Mason St.1927, § 8097;[10] *In re Trust Created under Will of Tufford,* 275 Minn. 66, 145 N.W.2d 59 (1966). The remainder interest was thus an asset of the estate to be disposed of by the probate court in adherence to its constitutional duty to distribute the estates of deceased persons.

We therefore conclude that the district court erred in setting aside the probate court decree on the basis that it lacked subject matter jurisdiction. On remand, the district court is instructed to construe the terms of the probate court decree, as was requested by the trustee, for the purpose of determining the ultimate class of remainder beneficiaries in the Paul M. Jones fund.

Reversed and remanded with directions.

Mr. Chief Justice SHERAN took no part in the consideration or decision of this case.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

10. The complete text of Mason St.1927, § 8097 (now Minn.St. 501.19), provides: "When an express trust is created, every estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to the person creating the trust, or his heirs, as a legal estate."