In the Matter of the ESTATE OF
Soren SORENSEN, Deceased.

Duane BAEHM, Claimant
and Appellant

v.

Svend SORENSEN and John
Sorensen, Appellees.

Civ. No. 11277.

Supreme Court of North Dakota.

Aug. 12, 1987.

Schoppert Law Firm, New Town, for appellant Duane Baehm; argued by Thomas K. Schoppert.

Thomas Law Firm, Minot, for appellees Svend Sorensen and John Sorensen; argued by Robert S. Thomas.

Anderson & Dobrovolny, Minot, for Arvilda Baehm; no appearance.

Teevens, Johnson, Montgomery, Minot, for Todd Baehm, Greg Baehm, Roland Baehm, Jr., & Charles Baehm; no appearance.

Ella Van Berkom, Minot, for Ellen R. Jensen; no appearance.

McGee, Hankla, Backes & Wheeler, Minot, for First Western State Bank, Personal Representative of the Estate of Soren Sorensen, deceased; no appearance.

Johnson, Sands, Lizee, Fricker & McCloskey, Minneapolis, Minn., for Royal Danish Consulate; no appearance.

ERICKSTAD, Chief Justice.

Duane Baehm appeals from the order entered by the Ward County Court on April 28, 1986, denying his claim to be recognized as the only child of Soren Sorensen and sole legal heir to Soren's estate. We affirm.

Soren Sorensen died intestate February 1, 1985. He is survived by three living brothers and the children of his five deceased sisters. He did not marry during his lifetime.

Soren was born March 16, 1906, in Denmark. He was reared in Denmark and served in the Danish army. In 1928, he immigrated to North Dakota where he farmed and operated a meat market southeast of Minot before moving to Harrison Township, where he managed a dairy farm and meat market.

Arvilda Baehm and her three children, Vyonne, Sharon, and Roland, moved to the Sorensen farm during the spring of 1943. Fred Baehm, Arvilda's husband and father of her three children, did not move with his family. At the farm, Arvilda did housework and prepared meals for Soren. She also performed miscellaneous duties in operation with Soren's dairy farm and meat market. Arvilda did not receive a regular wage for her work; however, Soren regularly provided for the needs of Arvilda and her three children and occasionally gave to Arvilda modest amounts of cash. While living and working at the Sorensen farm, Arvilda had a separate bedroom from that of Soren.

On May 4, 1944, Arvilda gave birth to her fourth child, Duane. Duane's birth certificate identifies Arvilda's husband, Fred Baehm, as Duane's father.

This appeal concerns Duane's claim that he is the only child and thus sole heir of Soren.

On February 8, 1985, a "Petition for Adjudication of Intestacy and Appointment of Personal Representative" was filed by Svend Sorensen, Soren's brother. On this date, the county court appointed Svend as special administrator.

On March 15, 1985, Duane filed a petition objecting to the appointment of Svend as personal representative and also filed a "Petition for Determination of Heirship" with a demand for a jury trial. On April 4, 1985, the county court issued an order of intestacy designating First Western Bank of Minot as personal representative of Soren's estate.

On June 24, 1985, Svend and John Sorensen, another brother of Soren's, moved to strike the jury demand and for judgment on the pleadings arguing that the county court was without jurisdiction to consider an issue of paternity. On August 9, 1985, the county court issued an order determining that Duane was entitled to a hearing but was not entitled to a trial by jury.

At the hearing, Arvilda testified that Soren was Duane's father. Duane testified under cross examination, however, that he and Soren both denied, under oath in an earlier child support proceeding against Duane, that they were father and son. No judicial determination to establish paternity was ever commenced prior to the death of Soren, nor did Soren acknowledge his paternity of Duane in any writing.

The county court found that Soren did provide the Baehm children with a home and the necessities of life, but did not openly hold out any of them as his natural children. The court acknowledged that there was testimony of isolated occasions when Soren either admitted or did not deny that Duane was his son; however, the court determined that these isolated occasions did not meet the requirements of Subsection 14–17–04(1)(d), N.D.C.C., of openly holding Duane out to be his natural child. The court concluded that Duane failed to prove that Soren received him into his home and openly held out Duane as his natural child by clear and convincing proof and ordered the estate to be distributed to Soren's surviving family.

The following issues are raised:

I

Whether or not the county court has jurisdiction to determine a father and child relationship.

II

Whether or not the statute of limitations bars Duane's petition to determine heirship.

III

Whether or not Duane established by clear and convincing proof that Soren was his natural father.

## IV

Whether or not Duane was entitled to a trial by jury on his petition to determine heirship.

Duane argues that he established by clear and convincing evidence that he was the son of Soren and that he was entitled to a trial by jury on this issue. Svend and John Sorensen respond that Duane was not entitled to a trial by jury on the issue of heirship because there was no right to a jury on this issue at the time of Soren's death. They also argue that the county court does not have jurisdiction under the Uniform Parentage Act, Chapter 14–17, N.D.C.C., to determine a father and child relationship because such an action must be instituted in district court and if Duane were to bring a paternity action in district court it would be barred by a statute of limitations. Duane has not responded to these additional arguments.

The first issue is whether or not the county court has jurisdiction to determine the existence of a father and son relationship when such a determination is incidental and preliminary to determining heirship.

Svend and John argue that the county court does not have jurisdiction to ascertain paternity because pursuant to Section 30.1–04–09, N.D.C.C., such jurisdiction resides in the district court. Section 30.1–04–09 reads as follows:

"If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

"1. An adopted person is the child of an adopting parent and not of the natural parents, except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and either natural parent.

"2. In cases not covered by subsection 1, a person is the child of its parents regardless of the marital status of its parents and the parent and child relationship may be established under the Uniform Parentage Act."

Section 14–17–07, N.D.C.C., of the Uniform Parentage Act provides that "[t]he district court has jurisdiction of an action brought under this chapter."

Apparently, Svend and John believe that the district court pursuant to the aforementioned statutes has exclusive jurisdiction to establish a father and child relationship. We disagree.

Section 27–07.1–17(4), N.D.C.C., provides that the county court shall have jurisdiction in "[p]robate, guardianship, and other testamentary cases pursuant to title 30.1." Section 30.1–02–02, N.D.C.C., provides for subject matter jurisdiction of the county court as follows:

"1. The county court has jurisdiction over all subject matter relating to guardianship, probate, and testamentary matters, including:

"a. Estates of decedents, including construction of wills and determination of heirs and successors of decedents.

"b. Estates of protected persons.

"c. Protection of minors and incapacitated persons.

"d. Trusts, to the extent necessary for the exercise of the court's jurisdiction over probate and testamentary matters.

"2. The district and county courts have concurrent subject matter jurisdiction over trusts, except as provided in subdivision d of subsection 1. The district court has jurisdiction of all causes at law and equity not inconsistent with the exclusive original jurisdiction over probate and testamentary matters vested by subsection 1 in the county court."

■ The general rule is that a probate court has jurisdiction to exercise all incidental powers necessary for the effective adjudication of those matters within its exclusive original jurisdiction. *Matter of Estate of Congdon*, 309 N.W.2d 261, 265 (Minn.1981); *Leslie v. Minneapolis Society of Fine Arts*, 259 N.W.2d 898 (Minn.1977). In *Leslie*, 259 N.W.2d at 903, the Minnesota Supreme Court observed:

"This jurisdiction to exercise incidental powers is frequently concurrent with the jurisdiction of the district courts. For example, a probate court has the inciden-

tal power to construe the provisions of a will, a power which may also be exercised by a district court. *State v. Ueland,* 30 Minn. 277, 15 N.W. 245 (1883). Perhaps the most interesting example of an incidental power occurred in *Vesey v. Vesey,* 237 Minn. 10, 53 N.W.2d 809 (1952), where we held that a probate court had subject matter jurisdiction to determine whether a decedent's death had been feloniously caused by his widow, a fact which, if proven, would preclude her from taking an inheritance under the decedent's will. The rule which emerges from these cases and others is that 'probate courts possess superior and general jurisdiction, and have implied power to do whatever is reasonably necessary to carry out powers expressly conferred.' *Fiske v. Lawton,* 124 Minn. 85, 91, 144 N.W. 455, 458 (1913); *State ex rel. Williams v. Probate Court of Lyon County,* 140 Minn. 342, 168 N.W. 14 (1918)." [Footnote omitted.] *See Matter of Estates of Josephsons,* 297 N.W.2d 444 (N.D.1980).

■ We believe in this case Duane's contention that he is the only child of Soren and thus sole legal heir to his estate raises an issue which is incidental to the jurisdiction conferred upon the county court by our Legislature pursuant to Subdivision 30.1–02–02(1)(a) involving the "determination of heirs and successors of decedents." [1]

We conclude in this case that the county court had implied authority to resolve the issue of Duane's alleged paternity because such a resolution was reasonably necessary to enable the court to effectively adjudicate

who should inherit Soren's estate. We note that this result is consistent with one of the underlying purposes and policies of the Uniform Probate Code which is "[t]o promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." Section 30.1–01–02(2)(c), N.D.C.C.

■ The second issue is whether or not Duane's petition is barred by a statute of limitations under the Uniform Parentage Act. Svend and John argue that Duane's petition to determine paternity is barred by the statute of limitations, specifically Section 14–17–06, N.D.C.C. Section 14–17–06 reads as follows:

"An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later. However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority. Sections 14–17–05 and 14–17–06 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise."

In our view, that section does not apply because it refers to a child who has no presumed father and Duane has a presumed father. Pursuant to Subsection 14–17–04(1)(a), N.D.C.C.,[2] Fred Baehm is

---

**1.** This is consistent with the adoption of the new judicial article (Article VI N.D. Const.) by the people in 1976 creating a unified court, and the adoption of H.B. 1060 in 1981 (Chapter 27–07.1, N.D.C.C.), by our Legislature which consolidated all county courts and greatly expanded the jurisdiction of county courts. After the Legislature has consolidated three types of county courts into one county court, expanded the authority of the court, and required that the court be filled with law-trained persons who function full time, it would seem incongruous to conclude that the Legislature would intend a county court which has specific authority to determine heirship should not have authority to determine

paternity which would be crucial to determining heirship.

**2.** Subdivision 14–17–04, N.D.C.C., reads as follows:

*"14–17–04. Presumption of paternity.*
"1. A man is presumed to be the natural father of a child if:
a. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;

Duane's presumed father. To establish a father and son relationship between Soren and himself, Duane would need to first rebut the presumption that Fred is his father in an appropriate action by clear and convincing evidence. Section 14–17–04(2), N.D.C.C.

The applicable statute of limitations appears to be Subsection 14–17–05(1)(b), N.D. C.C.,[3] which permits the action to be "brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth." We treat Duane's claim in this estate as a petition seeking to declare the nonexistence of a presumed father and son relationship with Fred and to establish a father and son relationship with Soren and as it is filed more than five years after Duane's birth it is not within the statute of limitations contained in Subsection 14–17–05(1)(b). It is accordingly barred.

As this issue disposes of this case, we find it unnecessary to answer the remaining issues. *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862 (N.D.1985).

For the reasons stated herein, the order of the Ward County court is affirmed.

VANDE WALLE and LEVINE, JJ., concur.

GIERKE, J., concurs in the result.

MESCHKE, Justice, concurring specially.

I concur cautiously, with reservations.

I fully concur that the county court had concurrent authority to determine paternity for inheritance. *See also C.L.W. v. M.J.*, 254 N.W.2d 446 (N.D.1977).

b. Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
(1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within three hundred days after its termination by death, annulment, declaration of invalidity, or divorce; or
(2) If the attempted marriage is invalid without a court order, the child is born within three hundred days after the termination of cohabitation;
c. After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
(1) He has acknowledged his paternity of the child in writing filed with the division of vital statistics of the state department of health;
(2) With his consent, he is named as the child's father on the child's birth certificate; or
(3) He is obligated to support the child under a written voluntary promise or by court order;
d. While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child; or
e. He acknowledges his paternity of the child in a writing filed with the division of vital statistics of the state department of health, which shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the division of vital statistics of the state department of health. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent of the presumed father or after the presumption has been rebutted.
"2. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."

3. Subsection 14–17–05(1)(b), N.D.C.C., reads as follows:
"1. A child, his natural mother, or a man presumed to be his father under subdivision a, b, or c of subsection 1 of section 14–17–04, may bring an action:
a. At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04; or
b. For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party."

I am uncertain whether the limitations in the Uniform Parentage Act bar inheritance. I am also uncertain whether those limitations are constitutional, if they do apply.

Regrettably, my doubts arise from assessment and research apart from adversarial development of the issues. As Chief Justice Erickstad mercifully puts it, "Duane has not responded to [the] additional arguments" by Svend and John Sorensen, as appellees. No reply brief was filed for appellant.

This court has become increasingly careful about deciding issues without the benefit of adequate adversarial presentations. For example, *see Gravning v. Gravning*, 389 N.W.2d 621, 623 (N.D.1986). Nevertheless, a plausible position put forward on appeal which is uncontradicted is easy to adopt. Unfortunately, there is risk in adopting an inadequately developed position—not merely hazard to the lawyer who is indifferent to the appellate process, but injury to the law itself. Thus, while there is enough plausibility in the limitations position advanced by the Sorensen brothers to allow my concurrence in spite of doubts, I believe it may be useful for future cases to voice my reservations.

My uncertainty about whether the limitations in the Uniform Parentage Act apply to inheritance stems from the Act itself. While the applicable section, if any, is NDCC § 14–17–05(1)(b), part of § 14–17–06 says:

"Sections 14–17–05 and 14–17–06 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise."

The Commissioners' Comment to the equivalent section of the Uniform Parentage Act says:

"The three year provision stated in the first sentence of this Section will serve as an admonition that paternity actions should be brought promptly. In effect, however, this Section provides for a twenty-one-year statute of limitations, except that *a late paternity action does not affect laws relating to distribution and closing of decedents' estates or to the determination of heirship.*" (Emphasis supplied.) Parentage Act § 7, 9A U.L.A. 596 (1979).

A child has no claim for an inheritance until the death of a parent. There is a separate time limitation expressed for decedents' estates in NDCC § 30.1–12–08. The cross-reference to the Uniform Parentage Act in our amended version of the Uniform Probate Code at § 30.1–04–09 ("... the parent and child relationship may be established under the Uniform Parentage Act.") does not explicitly incorporate time limitations. The Uniform Parentage Act itself seems to disclaim its limitations applying to inheritance. Because limitations of the Uniform Parentage Act raise constitutional concerns, an interpretation borrowing those limitations for the Uniform Probate Code would ordinarily be avoided. These factors raise doubts.

If a Uniform Parentage Act limitation is applied to inheritance, it may be unconstitutional today. In *Reed v. Campbell*, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the United States Supreme Court unanimously held unconstitutional a statute which barred inheritance by a child born out of wedlock and not legitimized by the subsequent invalid marriage of his parents. In *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), the United States Supreme Court unanimously held unconstitutional a Tennessee statute imposing a two-year limitations period on paternity and child support actions on behalf of some illegitimate children because it denied them the equal protection of the laws guaranteed by the Fourteenth Amendment, notwithstanding that it permitted such suits for some illegitimate children until their 18th birthday. In *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), a unanimous Supreme Court held unconstitutional a Texas statute which limited a suit against a natural parent for support of an illegitimate child to one year from birth. But, importantly, Justice O'Connor wrote a separate concurrence,

joined by four other justices, to make it plain that the court was not approving a recent amendment to the statute extending the limitation to four years and to emphasize that "the factors used in deciding that the one-year statute of limitation cannot withstand an equal protection challenge [indicate] that longer periods of limitation for paternity suits also may be unconstitutional." 456 U.S. at 106, 102 S.Ct. at 1558.

These decisions illustrate the pronounced trend of equal protection analyses rejecting statutes disfavoring illegitimate children. Simply stated, "[t]here should be legal equality for all children regardless of the status of the parents." [1]

For these reasons, I am uncertain about the correctness of today's decision. Nevertheless, I concur because the ruling is plausible, based upon uncontradicted argument, however dubious.

---

**1.** Statement from the minutes of the Social Welfare Committee of the North Dakota House of Representatives when it considered the Uniform Parentage Act in 1975.